## Bowles et al. v. Southern Public Service Co. et al.

Nov. 30, 1943.

O. T. Hinton for appellants.

Sidney Trivette, A. F. Childers, J. P. Hobson, Jr., Julian M. Auxier, Godfrey Wheeler, and Harry H. Ramey for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

H. C. Bowles and C. D. Jacobs instituted this suit to enforce specific performance of an alleged contract of sale covering the gas distribution system in Pikeville, which was owned by the Southern Public Service Com-

pany and its holding company, the American Utilities Service Corporation, and also to enjoin a proposed sale of the properties to the city. The two companies, the city, its mayor and councilmen, and a brokerage concern, Stein Brothers & Boyce, of Louisville, were made parties defendant. The petition was filed August 8, 1940. On the following September 20th, judgment was entered denying the relief sought on the ground that the proposal offered by the appellants was never accepted by the American Utilities Service Corporation, hereinafter referred to as the holding company, and that, in fact, it was rejected. In prosecuting this appeal the appellants state that the sole question involved is whether or not a contract was ever made between them and the owners of the gas distribution system in Pikeville.

A brief review of the circumstances preceding the beginning of this controversy will enable us better to understand it. The holding company owned certain isolated utility properties in Kentucky. Prior to 1940 it began disposing of these properties. In June of that year it engaged Stein Brothers & Boyce to negotiate for the sale of its three remaining properties located at Pikeville, Prestonsburg and Paintsville. A representative of the brokerage concern began negotiations with the city as to the purchase of the gas distribution system, and on June 18th, a proceedings contract was entered into between the city and the brokerage concern. On July 16th the city adopted a resolution authorizing the purchase of the system for $51,000. Late in July a difficulty arose which involved the taking over by the city of what has been referred to as the Sears contract. Under this contract the company had agreed to pay Sears 20 cents per thousand feet for all gas used in Pikeville until about 1948. The prevailing wholesale gas rate in the Pikeville area was in the neighborhood of 12 to 13 cents per thousand cubic feet. The mayor of the city, and at least one councilman, objected to this proposition, and expressed the view that the city would not assume the contract, but no formal action was taken by the council, and it was not until August 6th that a meeting was held. On that day, or the next, the city decided to accept the Sears contract, and thereafter a formal contract was entered into between it and the holding company for the purchase of the system. Incidentally, the city took over the system and began operating it in October of 1940.

The appellants had wanted the gas distribution system in Pikeville for several years, because they owned several producing gas wells in that territory. When it developed that the city was interested in purchasing the system these parties again became active. On August 1, when it appeared to the representative of the brokerage concern that the deal with the city might fall through, he contacted the appellants and had them submit a purchase proposal. This was addressed to the holding company at its Chicago office.

The record shows clearly that the holding company was very desirous of disposing of its Kentucky properties at the earliest possible moment, and, as usual under such circumstances, there was a good deal of telephoning back and forth between the interested parties. There were such conversations between the president and the attorney for the holding company in Chicago, with the representative of the brokerage concern in Louisville, and also with T. W. Hodge, manager of the Southern Public Service Company in Kentucky, and H. H. Ramey, attorney for the latter company. Ramey was instructed by the attorney for the holding company to prepare an application to be submitted to the Public Service Commission requesting permission to transfer the property to the appellants, and Hodge was instructed by the same person to sign the application. This was done, and, since the appellants stress the importance of this application, we quote it in part: "* * * and subject to the approval of this Commission, it has contracted and agreed to sell to C. D. Jacobs and H. C. Bowles, of Pikeville, Kentucky, for the sum of $52,500.00 cash, its natural gas distribution system, at Pikeville, and that said Jacobs and Bowles are in position to operate said property as efficiently as said Southern Public Service Company, and at a considerably less operating cost, all of which will result in great benefits to the general public." The appellants stress also a statement made by Mr. Ramey when they entered his office for the purpose of having the application prepared to the effect that "Boys, you have bought yourselves something."

It is the position of the appellants that they submitted a proposal for the purchase of the gas distribution system, and that it was accepted. They stress the conversations between Hodge and Ramey with the attorney for the holding company, the preparation of the

application form by Ramey, who for 12 years had been attorney for the Southern Public Service Company, and the signing of it by Hodge, the manager of the operating company. They cite numerous authorities in support of the propositions that no special action by the board of directors of the holding company was necessary to authorize its officers to make a sale, and also that an officer or agent clothed with apparent authority to act for a corporation in the usual course of its business can bind the corporation. But the question is, Did the holding company ever accept the proposal submitted by the appellants? The representatives of the brokerage concern testified that they had no authority to sell the properties, but rather were authorized only to accept bids. Mr. Ramey and Mr. Hodge testified they had been given no authority to sell the Pikeville property, and only did what the Chicago attorney had instructed them to do, namely, prepare an application to be filed with the Public Service Commission, purportedly, with the view of expediting matters.

At the time the appellants insist they purchased the property their proposal had not even reached the Chicago office of the holding company, and there had been no action whatever upon it. All of the evidence relating to what transpired between the brokerage concern and the president of the holding company would indicate the company was awaiting final action by the city. It had in its possession a definite proposal of purchase from the city. There had been no action by the city looking toward the withdrawal of that proposal. True it is there was a hitch concerning the Sears contract, but this did not mean that the proposition was going to fall through, because, as a matter of fact, it did not. Whether the agent of the brokerage concern, who was negotiating with the city, felt, in good faith, that the proposition was going to fall through, or whether he was attempting to put pressure on the city to speed up its actions, is not known, but, in either event, he had a right to receive the proposal of purchase from the appellants, but it is quite clear he or his concern had no right to act upon it.

Whether Mr. Ramey or Mr. Hodge could have acted for the Southern Public Service Company in the usual course of its business is beside the point. We are not dealing here with an event which could be classed with

one occurring in the usual course of the operating company's business, but rather the holding company was disposing of all of its properties in Kentucky. The holding company and not the Southern Public Service Company had authorized Stein Brothers & Boyce to accept bids on the Kentucky properties, and when the deal was finally consummated it was done in the contract between the holding company and the City of Pikeville. Under the circumstances we think the chancellor properly adjudged that there was never an acceptance of the appellants' proposal by the selling corporation.

Judgment affirmed.

Whole Court sitting, except Judge Ratliff.